The People of the State of New York, Respondent,
against
Liz Bucalo, Also Known as Elizabeth Bucalo-Lingerfelt, Appellant.




Suffolk County Legal Aid Society (Alfred J. Cicale of counsel), for appellant.
Suffolk County District Attorney (Michael J. Brennan of counsel), for respondent.

Appeal from a judgment of the Justice Court of the Town of Southampton, Suffolk County (Andrea H. Schiavoni, J.), rendered April 12, 2016. The judgment convicted defendant, upon a jury verdict, of obstructing governmental administration in the second degree and imposed sentence.




ORDERED that the judgment of conviction is affirmed.
Defendant was initially charged with uninsured operation of a motor vehicle (Vehicle and Traffic Law § 319 [1]), operating an unregistered motor vehicle (Vehicle and Traffic Law § 401 [1] [a]), operating a motor vehicle with switched plates (Vehicle and Traffic Law § 402 [4]), using a mobile phone while driving (Vehicle and Traffic Law § 1225-c [2] [a]), littering (Town of Southampton Code § 221.2 [a]), obstructing governmental administration in the second degree (Penal Law § 195.05), and resisting arrest (Penal Law § 205.30). An amended misdemeanor information was filed charging defendant with obstructing governmental administration in the second degree (Penal Law § 195.05). The amended information, in pertinent part, alleged the following:
"The defendant, at Flanders Road at Cypress Avenue, in the Hamlet of Flanders, Town of Southampton, County of Suffolk, State of New York, on or about Monday, August 19, 2013 at about 3:30 pm, intentionally obstructed, impaired or perverted the administration [*2]of law or other governmental function or prevented or attempted to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act . . . in that, the defendant, at the scene of a traffic stop, did attempt to walk away from the scene after being told to stand at the vehicle. The defendant did then litter and, when attempted to be lawfully arrested, did resist."
Defendant moved to dismiss the charge of obstructing governmental administration in the second degree on the ground of facial insufficiency. Counsel argued that the information did not establish that defendant "used any means of intimidation . . . any physical force or any interference or any independently unlawful act to obstruct governmental administration" (see Penal Law § 195.05). The Justice Court indicated that the information alleged intent and "actions which would constitute obstruction," and denied the motion.
At a jury trial, the People's evidence, insofar as it related to the charge of obstructing governmental administration in the second degree, included the following:
Town of Southampton Police Officer Carl Schottenhamel testified that, at approximately 3:12 p.m. on August 19, 2013, he was on Flanders Road in the Town of Southampton conducting traffic enforcement when he observed a gray 2002 Chevrolet Cavalier pass him. The driver of the vehicle was holding a cell phone to her ear with her left hand and was talking on it. Schottenhamel pulled the vehicle over, exited his police vehicle, and asked the driver, defendant, for her license, registration and insurance card. Defendant only produced the title to the vehicle. Schottenhamel went back to his vehicle to "make sure everything was valid." He learned that defendant had a valid driver's license but that the license plate on the Chevrolet was assigned to a blue Toyota registered to defendant.
Defendant explained to the officer that the license plate did not belong on the vehicle, that she had just bought the Chevrolet and she had put it on so she could go to work. The officer told defendant that the Chevrolet had to be impounded because it could not be on the road without registration or insurance, and that he would issue several tickets to her. Defendant became very angry. She cursed and told the officer to leave her alone, that she was not doing anything wrong. Schottenhamel asked defendant to step out of the vehicle and remove any personal belongings she did not want to leave in the vehicle. Defendant complied, taking her cell phone and a Styrofoam cup with crumbled-up paper inside of it. Schottenhamel brought defendant to the rear of her vehicle on the shoulder of the road, and told her to wait while he finished writing tickets.
Defendant was still angry and cursing. She told the officer that she was going to walk home and that he could mail her the tickets or she would pick them up when she recovered the vehicle from the impound lot. Schottenhamel replied that "that was not an option, that she needed to wait" while he finished the paperwork. When defendant stated that she had no way to get home and nobody to call, Schottenhamel offered to drive her home. After a few minutes, defendant moved "around a little bit," took the Styrofoam cup and threw it on the ground. She walked about 200 feet down Flanders Road. Schottenhamel drove his car up the street, got out, and asked defendant where she was going. Defendant tried to walk past Schottenhamel. He got in front of her. Defendant stopped, but she continued to yell that she was walking home and cursed at the officer several times. Schottenhamel told defendant that she could not leave. [*3]Defendant again tried to pass him. Schottenhamel thought that the situation was escalating and became concerned for his and defendant's safety, as she was trying to get around him on "an active road."
When defendant again tried to push past Schottenhamel, he grabbed her right wrist, twisted her hand behind her back, and tried to arrest her for littering. Defendant tried to pull back. She screamed that he should get off her and not touch her. Schottenhamel pushed her down on top of his patrol car. Eventually, Schottenhamel "dropped" defendant to the ground. Schottenhamel's sergeant arrived and assisted in handcuffing defendant.
During cross-examination, Schottenhamel testified that the Department of Motor Vehicles (DMV) office was located on Flanders Road in Riverhead. Defendant told him that she was coming home from work. She never told him that she was on her way to register the car.
A manager employed by the DMV testified that, after reviewing the DMV's records, she determined that the license plates assigned to a blue 2004 Toyota, which was registered to defendant, were cancelled on August 19, 2013. On August 22, 2013, a 2002 gray Chevrolet became registered to defendant.
Defendant testified that, on Sunday, August 17, 2013, defendant's son purchased the Chevrolet from a friend. It was not registered or insured on that date. Defendant wanted to register the car the next day. She testified that she called the Riverhead office of her insurance company, State Farm, but each call "went to voicemail." She had planned to get an insurance card from State Farm, which was "right down the block from the DMV," and then go to the DMV in Riverhead before it closed at 4:00 p.m. to get the car registered. On August 19, 2013, she was driving the Chevrolet on Flanders Road on her way to the DMV when she was stopped by the police. The license plate on the Chevrolet was from her Toyota. Officer Schottenhamel never told her why she had been stopped. When defendant was asked on direct examination if she had been talking on a cell phone prior to being stopped, she replied, "I don't believe so, no."
Defendant testified that she thought she had been stopped for the lack of a front license plate. She told the officer that she was on the way to the DMV to register the car. Defendant removed her belongings from the car without being told to do so. Defendant stood in front of her car, called her son, and asked him to pick her up. Schottenhamel then "squealed out from behind [her] car and . . . cornered [her] in between [her] car and his car." She thought the officer was going to hit her with the patrol car. Defendant testified that she never touched the officer or tried to push past him. The officer grabbed her hand as hard as he could, twisted it behind her back, and threw her to the ground. The officer then jumped on the back of her legs with his knees and dug them into her thigh. Defendant "heard a loud snap." She was "in excruciating pain" and thought her leg was broken.
During cross-examination, defendant testified that when Schottenhamel told her that he was going to impound her car, she started crying hysterically. When asked if she had cursed at Officer Schottenhamel, defendant replied, "I don't believe so."
At the close of all of the evidence, the court denied defendant's motion to dismiss the charge of obstructing governmental administration in the second degree.
During deliberations, the jury sent out a note asking whether "verbal abuse [can] be part of obstructing governmental administration." The court responded by re-reading the instructions for obstructing governmental administration in the second degree. The jury found defendant [*4]guilty of obstructing governmental administration in the second degree, operating a motor vehicle with switched plates, operating an unregistered motor vehicle, and operating an uninsured motor vehicle. The jury found defendant not guilty of resisting arrest, littering, and operating a motor vehicle while using a mobile telephone. The jury was then discharged.
Defendant moved to set aside the verdict convicting her of obstructing governmental administration in the second degree as repugnant/inconsistent with the jury finding her not guilty of littering and resisting arrest. The court asked that the motion be made in writing. No written motion appears in the record, nor is there an order determining such motion.
Defendant appeals solely from the judgment convicting her of obstructing governmental administration in the second degree. She contends that the information charging her with that crime was jurisdictionally defective because it alleged only that she engaged in "verbal abuse" of Officer Schottenhamel. Defendant argues that this claim is buttressed by the jury's note to the court as to whether one could be convicted of obstructing governmental administration in the second degree where the defendant engages only in verbal abuse. Defendant also contends that her guilt was not established beyond a reasonable doubt, that the verdict of guilt as to that charge was against the weight of the evidence, and that the guilty verdict on the charge of obstructing governmental administration in the second degree was repugnant/inconsistent with the acquittals of resisting arrest, littering, and operating a motor vehicle while using a mobile telephone.
"A valid and sufficient accusatory instrument is a nonwaivable jurisdictional prerequisite to a criminal prosecution" (People v Dreyden, 15 NY3d 100, 103 [2010]). An information is facially sufficient if the nonhearsay allegations, if true, establish every element of the crime charged and the defendant's commission of the crime (see CPL 100.40 [1]; People v Dumay, 23 NY3d 518, 522 [2014]). "So long as the factual allegations of an information give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense, they should be given a fair and not overly restrictive or technical reading" (People v Casey, 95 NY2d 354, 360 [2000]).
"A person is guilty of obstructing governmental administration [in the second degree] when he [or she] intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference . . ." (Penal Law § 195.05; see People v Dumay, 23 NY3d at 524). In this case, the information, in pertinent part, charges that defendant, "at the scene of a traffic stop, did attempt to walk away from the scene after being told to stand at the vehicle." An information charging a defendant with obstructing governmental administration in the second degree is sufficient if it alleges that the defendant engaged in inappropriate and disruptive conduct at the scene of a performance of an official function and that such interference was, at least in part, physical in nature (see People v Dumay, 23 NY3d at 524; People v Romeo, 9 AD3d 744, 745 [2004]; see also People v Graham, 54 AD3d 1056, 1057 [2008] ["the defendant became belligerent, cursed at the officer, and repeatedly walked into the opposite lane of traffic and back again," and the passengers in the vehicle had walked away]; People v Williams, 55 Misc 3d 134[A], 2017 NY Slip Op 50478[U], *4 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2017] [guilt established by proof that the defendant committed the physical acts of locking himself in a vehicle and grabbing onto the steering wheel, instead of complying with the officer's order to exit the vehicle]). Here, the information charging [*5]defendant with obstructing governmental administration in the second degree was facially sufficient, as it alleged that defendant had attempted to walk away from the scene after having been told to stand at her vehicle.
Viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620 [1983]), we find that defendant's conviction of obstructing governmental administration in the second degree was established beyond a reasonable doubt. The arresting officer instituted a traffic stop after having observed defendant commit a traffic infraction, operating a motor vehicle while using a mobile telephone. Thereafter, instead of complying with the officer's directions, defendant walked away from the scene of the stop. In exercising our factual review power (see CPL 470.15 [5]; People v Danielson, 9 NY3d 342, 348 [2007]), we find that the verdict of guilt of obstructing governmental administration in the second degree was not against the weight of the evidence.
Finally, defendant's claim of repugnancy/inconsistency is unpreserved for appellate review, as, even assuming that she moved to set aside the verdict in writing as requested by the court, she did so after the jury had been discharged (see CPL 470.05 [2]; People v Alfaro, 66 NY2d 985, 987 [1985]; People v Clayborne, 123 AD3d 842 [2014]; People v Vazquez, 82 AD3d 1273, 1275 [2011]).
Accordingly, the judgment convicting defendant of obstructing governmental administration in the second degree is affirmed.
MARANO, P.J., GARGUILO and BRANDS, JJ., concur.
ENTER:
Paul Kenny
Chief Clerk
Decision Date: June 21, 2018